IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02474-TPO

R.T.,[1]

     Plaintiff,

v.

FRANK BISIGNANO,[2] Commissioner,
Social Security Administration,

     Defendant.

---

**ORDER**

---

**Timothy P. O'Hara, United States Magistrate Judge.**

     Plaintiff applied for Title XVI supplemental security income under 42 U.S.C. §§ 1381, *et seq.*, of the Social Security Act (the "Act") on July 15, 2022. ECF 9 at 14. An Administrative Law Judge ("ALJ") rendered a decision finding Plaintiff not disabled under § 1614(a)(3)(A) of the Act. *Id.* at 25. The Appeals Council then denied Plaintiff's Request for Review, *id*. at 5, thereby leaving the ALJ's decision final and subject to judicial review. *See* 20 C.F.R. § 422.210(a). Jurisdiction is proper under 42 U.S.C. § 405(g). The Parties have consented to this Court conducting all proceedings, up to and including the entry of a final judgment. *See* ECF 10. The Court has carefully

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Frank Bisignano is the current acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See* 42 U.S.C. § 405(g) (an action survives regardless of any change in the person occupying the office of the Commissioner of Social Security).

considered the Parties' briefs, the Administrative Record,[3] and the applicable law. The Parties have not requested oral argument, and the Court finds it would not materially assist in its determination. For the reasons stated below, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

On July 15, 2022, Plaintiff filed an application for supplemental security income, alleging disability since July 3, 2016. Administrative Record ("AR") at 10. Plaintiff's claim was initially denied on January 4, 2023, and again upon reconsideration on July 19, 2023. *Id.* Plaintiff, through counsel, filed a request for a hearing before an ALJ. *Id.*

On December 6, 2023, Plaintiff and her attorney appeared for a hearing before ALJ Kurt Schuman. *Id.* at 36 (Hearing transcript). Plaintiff was 49 years old at the time of the hearing. *Id.* at 41. Plaintiff completed high school[4] but does not have a college education or any vocational training. *Id.* at 41-42. Plaintiff was previously married but is now divorced. Since her divorce, Plaintiff has lived alone for approximately two years. *Id.* at 43. Plaintiff has a driver's license and drives "occasionally." *Id*. at 47.

Plaintiff testified that she had not worked since July 3, 2016, primarily due to "major depressive disorder, anxiety, panic attacks" and Attention-Deficit/Hyperactivity Disorder ("ADHD") which "affect[] several areas, including [her] ability to focus, engage properly throughout the day" and her "ability to stay consistent and show up for work." *Id.* at 43-44. According to Plaintiff, her conditions also "cause somatic symptoms, like upset stomach,

---

[3] When citing to the Social Security Administrative Record ("AR") at ECF 9, the Court uses the page number found in the bottom right-hand corner of the page. For all other documents, the Court cites to the document and page number generated by the Electronic Court Filing ("ECF") system.

[4] Plaintiff testified that while in school, she was never enrolled in special education. *See* ECF 9 at 54.

headaches, [and] chronic fatigue." *Id.* These conditions also impair her concentration and cause brain fog. *Id.* Plaintiff attends weekly therapy sessions. *Id.* at 47.

Plaintiff had past relevant work experience[5] as a packer at a big box store, a job she held for 16 years. *Id.* at 44-45. Due to her declining mental health, though, Plaintiff's psychiatrist at the time placed her on "intermittent FMLA leave" during her last three years of employment. *Id.* at 44. She described her condition during this period as "up and down." *Id.* at 45. In the end, Plaintiff struggled to meet quotas and was fired "due to a technicality." *Id.* at 45.

The ALJ asked Plaintiff about her functioning over the last two years. ECF 9 at 55. She testified that, generally, she has been functioning less, i.e., "getting a little worse," as it relates to "remembering things [and] doing tasks." *Id*. Once again, Plaintiff described having "good days" where she is "able to do some stuff," along with "some bad days." *Id*. Plaintiff referenced leaving some tasks unfinished, including doing the dishes. *Id*. at 56. She described being able to clean her home but that it is still messy. *Id*. She noted that she has a "strong support system." *Id*. at 57. Without specificity, Plaintiff noted that if she were to work, there "would be some days that [she couldn't] make it in." *Id*. at 58.

The ALJ posed two hypothetical situations to the vocational expert that appeared at the hearing. *Id.* at 61-64. In the first hypothetical, the ALJ described an individual of Plaintiff's age, education, and work experience who is limited to the medium level of exertion as defined by the regulations, the ALJ asked the vocational expert whether such an individual would be able to perform Plaintiff's past relevant work:

---

[5] After being fired from her job as a hand packager, Plaintiff worked part-time as a grocery store deli clerk for approximately six months before she was terminated due to attendance issues. Plaintiff's employment as a deli clerk did not qualify as "substantial gainful activity." *See* AR at 46; 59-60.

> This person must never be required to climb ladders, ropes, or scaffolds. She is able to occasionally balance. . . . She must avoid all use of moving and/or dangerous machinery and all exposure to unprotected heights. She is able to tolerate concentrated exposure to excessive noise, with excessive noise defined as at the street level. This individual is further limited to work that consists of only simple, routine, repetitive tasks. She is able to maintain sufficient attention and concentration for extended periods of two-hour segments during the normal workday with normal breaks in work that consists of no more than simple, routine, repetitive tasks. She's further limited to work that requires no more than occasional interaction with the public and coworkers and to work that requires no more than occasional supervision. This is defined as requiring a supervisor's critical checking of her work.

*Id.* at 61. The vocational expert testified, "it appears past work does survive this particular hypothetical." *Id.* The ALJ then asked the vocational expert if, assuming the person is unable to perform past work, would there be any unskilled occupations that such individual could perform. *Id.* at 61-62. The vocational expert identified three such occupations: buffet attendant, car porter, and cleaner II. *Id.* at 62.

The ALJ then posed a second hypothetical:

> [A]ssume the same hypothetical as that of hypothetical #1 but add that due to a combination of medical conditions and mental impairments, this individual will require, on average, two additional breaks each workday of a duration between 15 and 30 minutes each in addition[] to regularly scheduled breaks and will be off task for more than 10% of normally scheduled workdays. . . [A]re there any unskilled occupations this individual could perform?

*Id.* at 63. To this second scenario, the vocational expert opined, "either one of those limitations would generally be inconsistent with all competitive employment." *Id.* The vocational expert then testified that 8-10% of the work shift is expected to be "off-task," with termination to be expected for employees that exceed that amount of "off-task" time during the work day. *Id*. at 64.

On cross-examination, Plaintiff's attorney asked the vocational expert whether (1) being off task for 15% of the workday and/or (2) consistently performing 15% behind other employees in the same role would become work preclusive to an individual's ability to perform simple,

4

repetitive tasks. *Id.* at 65-66. For the former, the vocational expert responded, "that would certainly not be tolerated." *Id.* at 65. In the second scenario, the vocational expert testified that "[f]ifteen percent would probably be . . . about where the break-off point would be." *Id.* at 66. He further opined, "15% would be noticeable after just several months." *Id.* However, if the employee spent approximately 10% "off-task," the expert testified that an employee "could probably coast for a year or so," i.e., could avoid termination for a significant period. *Id.* at 66.

Before the hearing was adjourned, the vocational expert asked the ALJ if he would like the vocational expert to provide any basis for the numbers, opinions, and testimony provided at the hearing. *Id.* at p. 67. The ALJ responded, "[n]o, I think we're okay." *Id.*

## **THE FIVE-STEP PROCESS FOR DETERMINING DISABILITY**

A claimant is determined to be under a "disability," as defined in the Act, "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" § 423(d)(2)(A); *see also* § 1382c(a)(3)(B). There also is a "duration requirement" for the disabling impairment: it must "ha[ve] lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A); *see also* § 1382c(a)(3)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

An ALJ follows a five-step sequential evaluation process to determine whether a claimant is disabled. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citing *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988)). The five steps to the analysis are:

1. Whether the claimant has engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant has, the Commissioner will find that she is not disabled. *Id.*

2.  Whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement" or "a combination of impairments that [are] severe and meet the duration requirement." §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant does not, disability benefits are denied. *Id.*

3.  Whether the claimant has an impairment or a combination of impairments "that meet or equal one of [the] listings in" Title 20, Chapter III, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, and "that meet the duration requirement." §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the claimant does,

4.  Whether the claimant has the residual functional capacity to "still do [the claimant's] past relevant work." §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

5.  Whether, considering the claimant's residual functional capacity and her "age, education, and work experience," the claimant can "make an adjustment to other work," §§ 404.1520(a)(4)(v); 416.920(a)(4)(v), that "exist[s] in significant numbers in the national economy." §§ 404.1560(c)(1)-(2); 416.960(c)(1)-(2).

"The claimant bears the burden of proof through step four of the analysis." *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993); *see also Williams*, 844 F.2d at 751 n.2. If the ALJ determines at Step Four that the claimant cannot perform her past relevant work, then the claimant has established a prima facie case of disability. *Nielson*, 992 F.2d at 1120. The analysis then proceeds to Step Five where the burden shifts to the ALJ to "show that a claimant can perform work that exists in the national economy" based on their residual functioning capacity, age, education, and work experience. *Id.* (citation omitted).

**<u>STANDARD OF REVIEW</u>**

In reviewing the Commissioner's decision, the court is "limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014) (citing *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). Judicial review is thus limited to these two inquiries. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnart*, 287 F.3d 903, 905 (10th Cir. 2001).

The phrase "substantial evidence" is a term of art in administrative law that describes how "an administrative record is to be judged by a reviewing court." *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 301 (2015) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963)). "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "more than a mere scintilla" and "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted); *see Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.").

The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular Tel., LLC v. City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003)). The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). Thus, the role of this court is to "determine whether the findings of fact . . . are based upon substantial evidence, and inferences drawn therefrom." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). A decision or finding is supported by substantial evidence when it is "based upon the record taken as a whole." *Wall*, 561 F.3d at 1052

(quotation omitted). But substantial evidence is lacking when the finding is "overwhelmed by other evidence in the record." *Id.* (quotation omitted).

Notwithstanding, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (citation omitted). The ALJ must provide "a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). A legal error, "even if the agency's findings are otherwise supported by substantial evidence," must be reversed. *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) (citing *Byron v. Heckler*, 752 F.2d 1232, 1234-35 (10th Cir. 1984); *Jensen*, 436 F.3d at 1165)) (unpublished).

## ALJ'S FINDINGS AND DECISION

### I.    Steps One Through Three

The ALJ determined at step one that Plaintiff had not engaged in gainful activity since the application date, July 15, 2022. ECF 9 at 12 (citing 29 C.F.R. § 4167.971 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments under SSR 85-28: (1) bipolar I disorder; (2) persistent depressive disorder with anxious distress; (3) generalized anxiety disorder; (4) borderline personality disorder; (5) dependent personality disorder; (6) post-traumatic stress disorder (PTSD); and (7) ADHD. *Id*. The ALJ also found that Plaintiff's diabetes mellitus is a non-severe impairment as defined in 20 C.F.R. § 404.1520(c) "due to the limited nature of the complaints, the good response to treatment, or the lack of any evidence of any functional limitations for any twelve-month period since the alleged onset date." *Id.*

Proceeding to Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925 and

416.926)." *Id.* The ALJ evaluated the criteria of listings 12.04 (Depressive, bipolar and related

disorders), 12.06 (Anxiety and obsessive-compulsive disorders), 12.08 (Personality and impulse-

control disorders), and 12.15 (Trauma- and stressor-related disorders) and made the following

findings about the severity of Plaintiff's impairments:

> In understanding, remembering, or applying information, the claimant has a *mild limitation*. . .
>
> In interacting with others, the claimant has a *moderate limitation*. . .
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a *moderate limitation*. . .
>
> As for adapting or managing oneself, the claimant has experienced a *moderate limitation*.

*Id.* at 13-14 (emphasis added). Because Plaintiff did not meet the criteria for at least two "marked"

limitations or one "extreme" limitation, the 'paragraph B' criteria were not met. *Id.* at 14. Citing

that Plaintiff "was independent in her selfcare and drove," the ALJ found the criteria in "paragraph

C" of listings 12.04, 12.06, 12.08, and 12.15 also were not met. *Id.*

## II.    Steps Four and Five

At Step Four, the ALJ considered Plaintiff's subjective complaints from the hearing. ECF

9 at 15. He properly refused to defer to prior administrative medical findings or medical opinions,

including those from medical sources.[6] *Id*. at 16. He then properly considered numerous medical

opinions and prior administrative medical findings. *Id*. at 16-20. After considering all of the

evidence of record, the ALJ determined that Plaintiff had the residual functional capacity (RFC)

to

---

[6] Plaintiff's prior application for Title II disability and disability insurance benefits was denied. *See* ECF 9 at 72-90.

9

perform medium work as defined in 20 C.F.R. § 416.967(c) except the claimant must never be required to climb ladders, ropes, or scaffolds. She can occasionally balance. She must avoid all use of moving and/or dangerous machinery, and must avoid all exposure to unprotected heights. She is able to tolerate concentrated exposure to excessive noise, defined as being noise at the street level. She is limited to work that consists of no more than simple, routine, repetitive tasks. She is able to maintain sufficient attention and concentration for extended periods of 2-hour segments during a normal workday with normal breaks, but only in work that consists of no more than simple, routine, repetitive tasks. She is limited to work that requires no more than occasional interaction with the public and coworkers, and to work that requires no more than occasional interaction with the public and coworkers, and in work that requires no more than occasional supervision, which is defined as requiring a supervisor's critical checking of her work.

*Id.* at 15. Based on the RFC and the VE's testimony, the ALJ found that Plaintiff could perform her past work as a hand packager. *Id.* at 20. Alternatively, at Step Five, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. §§ 416.969; 416.969a.

## ANALYSIS

Plaintiff raises the following issues for review: (1) the ALJ failed to comply with 20 C.F.R. § 416.920c when evaluating the medical opinions of Dr. Leidal and Dr. Fields; (2) the ALJ failed to support the RFC with substantial evidence and disregarded Plaintiff's reported symptoms; and (3) the ALJ erred when he did not inquire about and resolve any conflict between the VE's testimony presented at the hearing and the Dictionary of Occupational Titles (DOT). ECF 13 at 3. The Court finds all three of Plaintiff's arguments to be without merit.

### I.    The ALJ's Evaluation of Medical Opinions: 20 C.F.R. § 404.1520c(b)

For claims filed on or after March 27, 2017, the Social Security regulations require the ALJ to articulate how persuasive he found "all of the medical opinions." 20 C.F.R. § 404.1520c(b). The regulation sets forth five factors for considering the persuasiveness medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5)

"[o]ther factors . . . that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(b); 416.920c(c). "The factors of supportability . . . and consistency . . . are the most important factors," and the ALJ must provide an explanation for how he considered these two factors in the evaluation. *Id.* § 404.1520c(b)(2). The ALJ "may, but [is] not required to" explain how they considered the remaining factors. *Id.* As a result, the Court focuses on the first two factors.

"'Supportability' examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5-6 (10th Cir. July 6, 2021) (citing 20 C.F.R. § 404.1520c(c)(1); *id.* § 416.920c(a)) (alterations in original). "The supportability analysis looks at whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations." *J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, at *4 (D. Colo. Aug. 7, 2023) (citation omitted). "'Consistency,' on the other hand, compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and non medical sources in the claim, the more persuasive the medical opinion(s) . . . will be.'" *Id.* (citing 20 C.F.R. § 404.1520c(c)(2); *id.* § 416.920c(a)) (alterations in original).

The ALJ must consider all medical opinions, and "[i]f the RFC assessment conflicts with an opinion from a medical source the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Although the ALJ "'is not required to discuss every piece of evidence' . . . the duty to address the persuasive value of *all* medical opinion evidence of record—at least at the source level—is mandatory." *Ornelas v. Kijaziki*, No. 21-cv-01031-KRS, 2023 WL 418060 (D.N.M. Jan. 26, 2023) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th

11

Cir. 1996)) (internal citation omitted). Additionally, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

The Social Security regulations do not "prescribe the depth at which the ALJ must discuss" supportability and consistency. *Harp v. Kijakazi*, No. 21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). At the least, the ALJ must "eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Frazer v. Kijakazi*, No. CV 20-1147 GBW, 2022 WL 682661, at *5 (D.N.M. March 8, 2022) (citation modified). "Courts have deferred to ALJ's 'minimalist' findings on the supportability and consistency of medical opinions." *Id*. (collecting cases). And an ALJ "may reject a [medical opinion] outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation and emphasis omitted).

Here, in determining Plaintiff's RFC, the ALJ found consistent and persuasive the prior administrative findings of multiple psychological and medical State agency consultants—Dr. Ellen Ryan, M.D., Dr. Mark Suyeishi, Psy.D., Dr. Robert Pratt, M.D., and Dr. Erin Madden, M.D. AR at 17-19. Additionally, the ALJ found the medical opinion of Dr. A. Severance, D.O., the medical consultative examiner, to be "persuasive overall." *Id.* at 19. On the other hand, the ALJ found the opinions of Dr. Frederick Leidal, Psy.D., a psychological consultant examiner, and Dr. Aaron Fields, D.O., Plaintiff's primary care doctor, to be "not persuasive." *Id.* at 17-18. Finally, the ALJ

12

omitted an articulation about Diana Smith,[7] PMHNP, one of Plaintiff's treatment providers, because the ALJ determined that she provided a "statement on issues reserved to the Commissioner." *Id.* at 19.

Plaintiff takes issue with the ALJ's determination that Dr. Leidal's and Dr. Fields's medical opinions were "not persuasive." ECF 13 at 9-13. Specifically, Plaintiff argues that "the ALJ erroneously failed to discuss the supportability and consistency of these medical opinions limiting Plaintiff to less than full-time employment." *Id*. at 12.

In response, the Commissioner argues that the ALJ reasonably evaluated these medical opinions in determining the RFC. ECF 15 at 12. The Commissioner notes that the regulation only requires the ALJ to "articulate how persuasive he finds the opinions and prior administrative findings." *Id.* (citing 20 C.F.R. § 416.920c(b); *Zhu*, 2021 WL 2794533, at *5-6; 20 C.F.R. § 416.913(a)(2), (5)). When a medical source provides multiple medical opinions or findings, ALJs need not discuss each opinion individually and may address them "together in a single analysis." *Id*. at 13 (citing 20 C.F.R. Sect. 416.920c(b)(1)). The Commissioner points to specific portions of the record demonstrating that Dr. Leidal's and Dr. Fields's medical opinions lacked support and were inconsistent with the evidence. *See* ECF 15 at 12-17. This Court sides with the Commissioner, finding that the ALJ evaluated these two opinions correctly under 20 C.F.R. Sect. 416.920c and supported his findings with substantial evidence.

a. *Dr. Leidal's Medical Opinion*

---

[7] Plaintiff does not challenge the ALJ's determination that the opinion offered by Ms. Smith was not a "medical opinion" subject to the articulation requirements. *See generally* ECF 13.

On November 28, 2022, Dr. Leidal conducted a telehealth psychiatric evaluation upon request by the Colorado Department of Human Services/Disability Determination. *See* ECF 9 at 350. In his functional assessment, Dr. Leidal opined that Plaintiff was "mildly" impaired in: comprehension and application of information; memory; and ability to maintain attention and concentration. *Id.* at 354-55. Dr. Leidal identified the following "moderate" impairments: ability to follow more complex instructions or directions in a work setting; persistence and pace; ability to perform a simple repetitive task; ability to perform multi-step tasks; ability to relate to others, although situational; and ability to withstand mental stress and pressures associated with day-to-day work activity. *Id.*

### i.    *Supportability*

Plaintiff first asserts that the ALJ erred by failing to adopt Dr. Leidal's observations of Plaintiff and failing to support his conclusions with substantial evidence. *See* ECF 13 at 10. Plaintiff's argument is not convincing. The ALJ provided multiple reasons for not finding Dr. Leidal's opinion persuasive, including that Dr. Leidal: (1) only examined Plaintiff on one occasion, (2) relied on Plaintiff's subjective representations concerning her ability to interact with others, (3) provided opinions that were inconsistent with Plaintiff's mental status exams and daily activities,[8] and (4) made only vague statements and failed to provide a function-by-function analysis.[9] ECF 9 at 18. The Court finds the ALJ's conclusion to be supported by substantial evidence.

---

[8] Dr. Leidal's own observation of Plaintiff, as part of the Mental Status Examination described her to be "clearly alert and oriented" with appropriate eye contact and behaviorally, "composed and appropriate for the situation." ECF 9 at 352. Plaintiff's description of activities of daily living also called into question Dr. Leidal's Functional Assessment. *Id.* (noting Plaintiff's fairly normal daily routines, her ability to conduct independent activities of daily living while living alone, and her social activities).

[9] Plaintiff also misstates Dr. Leidal's opinion regarding a payee for benefits: he opined that a payee was *not needed*. *See* ECF 9 at 354.

Plaintiff also challenges the ALJ's failure to adopt the observations made during his examination of Plaintiff. This Court sees Plaintiff's argument as a request for this Court to reweigh the evidence, which would be improper. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Plaintiff's opening brief largely points to parts of the record which Plaintiff argues refute the ALJ's determination. *See* ECF 13 at 9-13. Indeed, the ALJ supported his finding that Dr. Leidal's opinion was not persuasive with not one, or two, but multiple reasons. ECF 9 at 18. Thus, the ALJ articulated grounds for the unsupportability of Dr. Leidal's opinion as required by 20 C.F.R. § 416.920c(b)(2), so the Court finds no legal error here.

This Court determines that the ALJ evaluated Dr. Leidal's findings appropriately and his decision to find Dr. Leidal's opinions as unsupported is supported by substantial evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'") (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

ii.   *Consistency*

Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles v. Comm'r*, No. 20-cv-01456-WJM, 2021 WL 3076846, at *3 (D. Colo. July 21, 2021) (citation and quotations omitted). Unless the inconsistency is obvious, the ALJ must explain how the evidence is inconsistent with work-related functional activities. *See J.T.L.*, 2023 WL 5017241, at *8 (finding no obvious inconsistency between the plaintiff's ability to drive and attend important events with a marked limitation in attendance and punctuality). Regarding Dr. Leidal's opinion, the ALJ stated, in full:

> The evidence of the claimant's stable mental status exams and daily activities is inconsistent with Dr. Leidal's opinion. For example, the claimant could use the

15

internet, talk to friends on Facetime, and drive. This evidence is inconsistent with finding a "moderate" impairment in relating to others and dealing with workplace stress. Additionally, the claimant's ability to perform selfcare independently and perform some household chores is inconsistent with finding a "moderate" limitation in maintaining concentration and attention.

ECF 9 at 18.

Here, the inconsistency between some of Dr. Leidal's observations and the other evidence in the record, explicitly recognized by the ALJ, is obvious. For example, Plaintiff's presentation to the ALJ and Dr. Leidal, when combined with her admitted functionality in her daily life as described by multiple other sources, ECF 9 at 16-20, contradicted the observations made by Dr. Leidal as part of the Functionality Assessment, ECF 354-55. And the ALJ described this inconsistency with sufficient detail. *See Watkins*, 350 F.3d at 1301 (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) ("if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so.")).

The Court notes that Plaintiff only cherry picks a select few statements from Dr. Leidal's report to attack the ALJ's findings. ECF 13 at 9-10. "The Court's task is not to reweigh the evidence, but to determine if the ALJ's decision is supported by substantial evidence." *Borden v. Saul*, No. 18-cv-02873-PAB, 2020 WL 2832379, at *6 (D. Colo. June 1, 2020) (citing *Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004)).

### b.  Dr. Fields's Medical Opinion

Plaintiff also argues that the ALJ erred by finding Dr. Fields's opinion not persuasive. ECF 13 at 11. Plaintiff never specifically states what finding of the ALJ's was incorrect, merely insinuating that he found that Dr. Fields's opinion was not "supported by treatment notes." ECF 13 at 11. Plaintiff's arguments are too conclusory to sufficiently raise issues for appeal. *See Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) (declining to consider undeveloped argument). Moreover, Plaintiff misrepresents the ALJ's findings.

On supportability, the ALJ found Dr. Fields's opinion lacking support for multiple reasons. First, Dr. Fields failed to support his conclusory opinion "with specific exam findings he made of claimant." ECF 9 at 18. Instead, Dr. Fields "completed a checkbox form noting the claimant's mental diagnosis." *Id*. Additionally, as with Dr. Leidal, the substance of Dr. Fields's opinions was inconsistent with his own stable exam findings of Plaintiff. *Id*.[10]

Plaintiff's primary attack[11] on the ALJ's findings in this area centers on the ALJ's failure to recognize the consistency of Dr. Fields's opinions. *See* ECF 13 at 11 (noting that Dr. Fields's opinion "was supported by treatment notes"). And while there is evidence in the record that may be consistent with some of Dr. Fields's findings, *id.* at 11-12, the ALJ provided sufficient information to support his conclusion that Dr. Fields's opinions were not persuasive. Specifically, the ALJ found Dr. Fields's medical opinion inconsistent with evidence of Plaintiff's "good activities of daily living." *Id.* Plaintiff's independence in selfcare and ability to drive, the ALJ reasoned, were "inconsistent with finding she was unable to meet competitive standards in being aware of workplace hazards or following workplace procedures." *Id.* Citing Plaintiff's ability to engage with the ALJ and examiners, he found Dr. Fields's "interpersonal assessment" inconsistent with the record. *Id.* Even if this Court disagrees with the ALJ's ultimate conclusion, this Court may not overturn it because it is supported by substantial evidence.

---

[10] The ALJ also found Dr. Fields's opinion to be "vague as he does not provide a specific, function-by-function analysis of the most the claimant is capable." *Id*. This does not bear on the internal supportability of Dr. Fields's medical opinion and thus does not fall under the mandatory articulation requirement.

[11] In one line, Plaintiff mentions that the ALJ's findings are not "supported by" the other evidence in the record. ECF 13 at 12. However, as discussed above, the "supportability" factor concerns whether the opinion is supported by the source's own evidence. *J.T.L.*, 2023 WL 5017241, at *4. This argument is never developed by Plaintiff.

The Tenth Circuit has explained that medical source opinions presented through check-box forms are not necessarily improper per se, but such opinions must be supported by substantial evidence, either on the forms or elsewhere in the record. *See Anderson v. Astrue*, 319 F. App'x 712, 723-34 (10th Cir. 2009) (unpublished). Here, the ALJ discredited Dr. Fields's opinion due to the vague nature of the form and stated that "Dr. Fields did not support his opinion with specific exam findings he made of the claimant." ECF 9 at 412. Because Plaintiff has only pointed to evidence she believes refutes the ALJ's findings, Plaintiff has raised no new arguments requiring more than a cursory analysis and rejection.[12]

As a result, this Court finds that the ALJ's conclusion finding Dr. Fields's checkbox report as not persuasive fails to provide a basis for reversal or remand. The ALJ sufficiently articulated his persuasiveness findings, committing no legal error, and there is substantial evidence to support these findings.

## II.  The Residual Functional Capacity

Plaintiff also attacks the ALJ's Residual Functional Capacity (RFC) for failing to consider Plaintiff's subjective complaints. ECF 13 at 13-17. In support of this claim, Plaintiff presents a series of citations to the record that ostensibly demonstrate various aspects of Plaintiff's impairment, as reported by Plaintiff, either to the ALJ or to medical providers. *Id*. Then, in conclusory fashion, Plaintiff argues: "[t]he ALJ's failure to discuss the symptoms described by

---

[12] Plaintiff alleges that the ALJ's findings "were not supported by nor were they consistent with the medical evidence requiring a remand of this matter." ECF 13 at 11. However, as it relates to the ALJ's finding of Dr. Fields as not persuasive, the record reflects Dr. Fields completed the checkbox form on October 11, 2023. ECF 9 at 412-13. Approximately three weeks before, on September 19, 2023, *id*. at 444-48, and four days later, on October 15, 2023, *id*. at 440-43, Dr. Fields examined Plaintiff in person. And in these reports, Dr. Fields failed to note any sort of mental impairment examination that could be considered consistent with those observations noted in the October 11, 2023, record. *Id*. The Report of Systems (ROS) for each visit was unremarkable. *Id*. This evidence in the record supports the ALJ's findings.

Plaintiff and included in the treatment notes and opinions of the treating and examining sources meant that the RFC was not supported by substantial evidence." *Id*. at 17. Plaintiff fails to point to a specific complaint that the ALJ ignored.

A claimant "is entitled to have [her] nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988)). The ALJ "need not discuss each piece of evidence in every part of claimant's testimony" as long as the opinion makes clear "that a claimant's testimony was considered." *Id*. (citing *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006)).

Once again, Plaintiff's arguments do not accurately reflect the ALJ's findings. The ALJ, in fact, did consider all of the subjective complaints made by Plaintiff at the hearing. *See* ECF 9 at 15-16. The ALJ's Decision also suggests that he reviewed the records of all of the sources cited by Plaintiff and considered Plaintiff's subjective complaints. *See id*. at 16-20. After considering all of the relevant evidence, the ALJ found that Plaintiff's subjective statements "are not entirely consistent with the medical evidence and other evidence in the record." *Id*. at 16. And the ALJ described specific places in the record where Plaintiff's mental status exams were consistently stable, demonstrating stability throughout the alleged disability period. *Id*.

In the end, this Court finds that the ALJ's RFC properly considered Plaintiff's subjective complaints and that there is substantial evidence in the record to support the ALJ's decision not to fully accept them as true. Even though there may be an equally logical interpretation for the evidence, that is not a sufficient basis to overturn the ALJ's decision. *Zoltanski*, 372 F.3d at 1200 (quoting *City of Broken Arrow*, 340 F.3d at 1133). It is not this Court's job to reweigh the evidence and the Court resists the invitation to do so yet again. *Borden*, 2020 WL 2832379, at *6.

### III. ALJ'S Failure to Inquire of the Vocational Expert

Plaintiff's final argument is that the ALJ failed to resolve a conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles (DOT). ECF 13 at 18. However, Plaintiff fails to demonstrate the existence of any conflict that was necessary for the ALJ to resolve.

At the Hearing, the ALJ proposed two hypotheticals to the Vocational Expert. The first one involved Plaintiff's exact characteristics. ECF 9 at 61. The Vocational Expert indicated that Plaintiff's past work would be appropriate for an individual with those characteristics. *Id*. Then the ALJ changed the hypothetical to add additional break time between 15 and 30 minutes and the individual being off task for more than 10% of the normally scheduled workday. *Id*. at 63. Under that new hypothetical, employment was inconsistent with the individual's condition. *Id*. Plaintiff's attorney was then allowed to ask questions. *Id*. at 64. At the conclusion of his testimony, the Vocational Expert asked the ALJ if an additional basis for the numbers was necessary. The ALJ stated no.

The ALJ "must either ensure that VE testimony corresponds to the DOT or explain any variance." *K.M. v. Commissioner, Social Security Admin*., No. 23-cv-00654-KAS, 2024 WL 1374956, at *7 (D. Colo. Mar. 31, 2024) (citations omitted). Plaintiff fails to raise an issue with the VE's testimony not corresponding to the DOT. Instead, Plaintiff merely states, without any support, that no explanation was provided establishing that these jobs could be performed with Plaintiff's limitations. ECF 13 at 18. Yet during the hearing the VE specifically referenced jobs from the DOT. ECF 9 at 62. Plaintiff's counsel was present at the hearing to demonstrate any variance between the DOT and the VE testimony, which he did not do. Because there were no demonstrated conflicts, and still are none, between the VE's testimony and the DOT's job descriptions, any error by the ALJ in failing to fully inquire about conflicts was harmless. *See*

*Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153-54, 1154 n.19 (9th Cir. 2007)).

## **CONCLUSION**

Based on the foregoing, this Court finds that the ALJ's determination that Plaintiff is not disabled is **AFFIRMED**. The Clerk of Court shall enter judgment in Defendant's favor and shall close this civil action.

DATED at Denver, Colorado, this 31st day of March, 2026.

BY THE COURT:

_____
Timothy P. O'Hara
United States Magistrate Judge

21